ROBERT A. SNYDER *et al.*, Plaintiffs-Appellees, v. JOHN J. LOWREY *et al.*, Defendants-Appellants.

Third District   No. 3—85—0323

Opinion filed February 14, 1986.

Michael W. Rathsack, of Chicago, for appellants.

George F. Mahoney III, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellees.

JUSTICE BARRY delivered the opinion of the court:

Defendant John J. Lowrey, an attorney, appeals from an order of the circuit court of Will County holding him in contempt of court for refusing to comply with a discovery order which required him to produce the names of lawyers who have referred cases to him during the last 10 years, the names of clients so referred, and other details of referral cases.

Plaintiffs, Robert A. Snyder, Edward R. Jaquays, William C. Washburn, Jr., and Lyman C. Tieman, are attorneys who practice law in Joliet and who brought suit to recover attorney fees allegedly due them from defendant Lowrey under a referral agreement. According to the amended complaint filed herein, in 1975 defendant solicited from plaintiffs the forwarding of medical malpractice and other personal injury cases in return for which defendant would pay plaintiffs 50% of any fees received by defendant from such referred claims. Responding to this solicitation, plaintiffs referred the medical malpractice claim of Cecil and Marcia Williams to defendant. The Williams' claim arose out of their minor daughter's loss of sight. Plaintiffs further allege that defendant orally agreed to pay plaintiffs 50% of the fees received for the Williams' claim, that defendant filed suit in Cook County against the doctors and hospital who were involved, that plaintiffs acted as local counsel and were jointly responsible and liable for the legal services performed in connection with the claim, and that the agreement with defendant was amended in 1983 to provide for defendant to receive 60% of all fees collected and plaintiffs to re-

ceive 40%.

Before trial two doctors settled for $410,000, as a result of which defendant was awarded attorney fees of $129,166. He promptly paid plaintiffs $43,055 and a few days later he remitted an additional $8,611, so that his total payment to plaintiffs amounted to 40% of the total fee award. Following trial of the remainder of the case, judgment was entered in favor of Williams in the amount of $2,500,000. Defendant received attorneys' fees of $666,666 as a result of that judgment, but, according to plaintiffs, he has refused to pay them the 40% share due them under the agreement. In the instant cause, plaintiffs seek to recover the sum of $266,666 plus $75,000 punitive damages.

Defendant's answer herein included, by way of an affirmative defense, the assertion that the alleged oral contract for division of fees is void because it is contrary to public policy and in violation of the American Bar Association Disciplinary Rule 2—107. Defendant also filed a counterclaim seeking return of the fee of $51,666 paid to plaintiffs earlier. In the course of pretrial discovery, plaintiffs filed some 63 interrogatories, including Nos. 34 and 35, which sought the names of all attorneys who have referred cases to defendant during the past 10 years, the names of all persons so referred, the amount of fees paid to the referring attorney and the amount retained by defendant in each case. Defendant filed objections to these and other interrogatories. After the trial court denied the objections to interrogatories Nos. 34 and 35, defendant refused to comply. So as to have an appealable order, defendant requested that he be held in contempt of court and given a fine. The trial court obliged, imposing a fine of $200, and this appeal followed.

Defendant contends that the information sought to be discovered by the two interrogatories at issue were not relevant to the underlying litigation. He states that the only two issues framed by the pleadings were whether an oral referral agreement existed at all and, if so, whether it was void as violating the Code of Professional Responsibility adopted by the Illinois Supreme Court. (See 87 Ill. 2d R. 2—107.) Defendant reasons that the disclosure of past referral arrangements is not relevant to either of these issues.

■ The firmly established rule is that the scope of discovery includes not only that which is admissible at trial but also that which leads to what is admissible at trial. (*Monier v. Chamberlain* (1966), 35 Ill. 2d 351, 221 N.E.2d 410.) Moreover, great latitude is allowed in the scope of discovery, and the trial court has broad discretion on ruling on discovery matters, which discretion will not be interfered with on

appeal in the absence of a manifest abuse of discretion affirmatively and clearly shown by the appellant. *Mistler v. Mancini* (1982), 111 Ill. App. 3d 228, 443 N.E.2d 1125.

■ We think the record clearly indicates that the primary factual issue concerns, not the existence of an oral contract, but rather the terms of that contract. Attached to the complaint as an exhibit is a letter from defendant to plaintiffs, dated August 30, 1983, in which defendant said: "This is in response to your letter of August 10, 1983, agreeing to a 60/40 split of the attorney fees ***." At oral argument before this court, defendant admitted that such a payment was made, indicating that defendant had performed pursuant to an agreement, as alleged by plaintiffs. Thus, the *existence* of a fee-sharing agreement between the parties cannot be denied.

However, the *terms* of that agreement are not so clearly established at this stage. Certain factual issues are raised by defendant's denials of the allegations contained in paragraphs six and seven of count I of the amended complaint, where plaintiffs assert that defendant solicited referral of medical malpractice cases and that he made an oral agreement concerning the division of fees received from such referrals. The disclosure of his custom and practice in soliciting referrals would be relevant to the issues relating to his solicitation offer here. Also, as plaintiffs argue, given defendant's claim that such an agreement is violative of public policy, the fact that he customarily enters into such agreements would be relevant for purposes of impeachment.

■ Defendant also claims that the disputed interrogatories seek information that is privileged. Client identity is not generally protected from discovery unless disclosure would harm the client in some substantial way. (*People v. Doe* (1977), 55 Ill. App. 3d 811, 371 N.E.2d 334.) There is no such showing here other than a general argument that the referring lawyers might be embarrassed if their referrals were made public and that defendant's practice might suffer in the future. We agree with the statement of the court in *People v. Doe*: "Economic pressures have not served to invoke an exception to the general rule [in favor of disclosure of the names of clients] any more than have the fears of possible annoyance or embarrassment suggested by defendant." (55 Ill. App. 3d 811, 814-15, 371 N.E.2d 334.) If requested, the trial court has discretionary authority to provide for any procedural measures necessary to protect against unreasonable annoyance, expense, embarrassment or disadvantage. *Mistler v. Mancini* (1982), 111 Ill. App. 3d 228, 443 N.E.2d 1125.

■ The order of the trial court is affirmed, but since the discov-

ery of referral client information involves issues of first impression in Illinois, we direct that the fine be vacated when defendant complies with the discovery order. (See *Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 432 N.E.2d 250.) Defendant's noncompliance was solely for the purpose of obtaining an appealable order to test the validity of the ruling of the trial court.

For the reasons stated above, we affirm the order of the trial court.

Affirmed with directions.

HEIPLE, P.J., and SCOTT, J., concur.