LONNIE MAXWELL, Plaintiff-Appellant, v. HOBART CORPORATION, Defendant-Appellee and Third-Party Plaintiff (Northwestern Memorial Hospital, Defendant).

First District (6th Division)   No. 1—90—2017

Opinion filed June 21, 1991.

RAKOWSKI, P.J., dissenting.

Charles A. Boyle & Associates, Ltd., of Chicago (Charles A. Boyle and Liana A. Bizios, of counsel), for appellant.

Tressler, Soderstrom, Maloney & Priess, of Chicago (Francis A. Spina, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Lonnie Maxwell, filed a two-count complaint against defendant Hobart Corporation for injuries sustained on June 8, 1986, when his hand became caught in a waste equipment machine manufactured by defendant. The complaint, which sounds in negligence and strict products liability, alleged that the system activated without warning while plaintiff attempted to clear a jam. At the time of the accident, plaintiff was employed by Northwestern Memorial Hospital (Northwestern) in the food service area.

A test performed at Northwestern following the accident revealed that plaintiff's blood-alcohol level was .136 grams. In re-

sponding to interrogatories, plaintiff indicated that he had consumed alcohol within the 24 hours prior to the accident, but failed to state the quantity consumed or the time.

Defendant issued a subpoena to Northwestern for production of all its records regarding plaintiff. (Defendant subsequently initiated a third-party claim against Northwestern.) Northwestern informed defendant that it refused to produce records from its "Employee Assistance Program" without plaintiff's authorization. Plaintiff refused to execute a release and Northwestern continued to refuse to produce the records. (Although the treatment records at issue are not part of the record on appeal, we gather from plaintiff's brief and from the parties at oral argument that the records concern plaintiff's treatment for alcoholism.)

Defendant subsequently filed its motion to compel disclosure of the employee assistance program records. The judge directed plaintiff to produce the records for *in camera* inspection and requested that both parties file briefs on whether the records were discoverable.

On May 11, 1990, after a hearing on defendant's motion and an *in camera* review of the records, the court ruled that the documents designated by Bates stamp series 300 were not privileged and were, therefore, discoverable. The court returned all the documents to plaintiff and ordered him to produce them within 14 days. The court also determined that the series 100 and 200 documents, not at issue on appeal, were protected from disclosure.

Despite the court's order, plaintiff refused to produce the discoverable documents. Defendant moved to compel plaintiff's compliance or, alternatively, for a rule to show cause against plaintiff's attorney. At the hearing on the motion, plaintiff, through counsel, indicated that he would not comply with the order due to the sensitive nature of the records. The court then entered a contempt order against the attorney, from which this appeal is taken.

The sole issue on appeal is whether the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1987, ch. 91½, par. 801 *et seq.*) or the Alcoholism and Other Drug Dependency Act (Ill. Rev. Stat. 1987, ch. 111½, par. 6358—2) protects the records from disclosure. We consider each act separately.

■ Initially, we note that a trial court is afforded great latitude in ruling on discovery matters, and this court will not disturb such rulings on appeal absent a manifest abuse of discretion. (*Computer Teaching Corp. v. Courseware Applications, Inc.* (1990), 199 Ill. App. 3d 154, 556 N.E.2d 816.) Pretrial discovery presupposes a

range of relevance and materiality much broader than that of admissiblity of evidence at trial. (134 Ill. 2d R. 201(b)(1); *Brostron v. Warmann* (1989), 190 Ill. App. 3d 87, 546 N.E.2d 3.) Moreover, privileges are to be strictly construed as exceptions to the general duty to disclose during discovery. *Waste Management, Inc. v. International Surplus Lines Insurance Co.* (1990), 203 Ill. App. 3d 172, 560 N.E.2d 1093.

Plaintiff first maintains on appeal that the trial court erroneously found that Northwestern's records regarding plaintiff's treatment for alcoholism were not protected by the Mental Health and Developmental Disabilities Confidentiality Act (Confidentiality Act).

■ Section 10 of the Confidentiality Act provides, in pertinent part:

> "(a) Except as provided herein, in any civil *** proceeding, *** a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications." (Ill. Rev. Stat. 1987, ch. 91½, par. 810(a).)

The Confidentiality Act defines "recipient" as "a person who is receiving or has received *mental health or developmental disabilities services.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 91½, par. 802(6).) Further, the statute defines "record" as follows: "[A]ny record kept by a therapist or by an agency *in the course of providing mental health or development disabilities service* to a recipient concerning the recipient and the services provided." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 91½, par. 802(7).

■ Plaintiff argues that alcoholism treatment is a mental health service within the meaning of the privilege. In support of this contention, plaintiff directs us to references to alcoholism as a "mental disorder" by the American Psychiatric Association and the World Health Organization. We decline, however, to rely on such sources when to do so would defy principles of statutory construction and ignore legislative intent. Although the legislature did not define "mental health services" for purposes of the Confidentiality Act, we cannot conclude that the legislature intended "mental health services" to include alcoholism treatment.

■ It is a well-settled rule of statutory construction that when two statutes deal with the same subject, one specific and one general, the more specific statute controls. (*Crawford County State Bank v. Marine American National Bank* (1990), 199 Ill. App. 3d 236, 556 N.E.2d 842.) The Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1987, ch. 91½, par. 801

*et seq.*) became effective on January 1, 1979. The Alcoholism and Other Drug Dependency Act (Ill. Rev. Stat. 1987, ch. 111½, par. 6351 *et seq.*), on the other hand, became effective on July 1, 1988. While both statutes protect against disclosure of treatment records, the latter pertains particularly to treatment of alcohol abuse. Because the records at issue here specifically concern alcoholism treatment, the record disclosure provisions of the Alcoholism Act, rather than the Confidentiality Act, control. We decline to give the Confidentiality Act the expansive construction urged by plaintiff.

■ Moreover, even if the Confidentiality Act protected alcoholism treatment records, we find that the statutory exception to the nondisclosure mandate applies here to permit disclosure. (Ill. Rev. Stat. 1987, ch. 91½, par. 810(a)(1).) The exception to the privilege arises:

> "[I]n a civil *** proceeding in which the recipient introduces his mental condition or any aspect of his services received for such condition as an element of his claim or defense, if and only to the extent the court in which the proceedings have been brought *** finds, after in camera examination of testimony or other evidence, that it is relevant, probative, not unduly prejudicial or inflammatory, and otherwise clearly admissible; that other satisfactory evidence is demonstrably unsatisfactory as evidence of the facts sought to be established by such evidence; and that disclosure is more important to the interests of substantial justice than protection from injury to the therapist-recipient relationship or to the recipient or other whom disclosure is likely to harm." Ill. Rev. Stat. 1987, ch. 91½, par. 810(a)(1).

Plaintiff maintains that the exception does not apply because he did not raise his mental condition as an issue. Additionally, he argues that the records are irrelevant to any issue in this case. Neither argument is persuasive.

We note that the law is by no means settled in this area. Some States' statutes expressly provide for a waiver when the privilege holder places his physical or mental condition at issue. (See *City & County of San Francisco v. Superior Court* (1951), 37 Cal. 2d 227, 231 P.2d 26; *Davidge v. Davidge* (D.C. App. 1984), 451 So. 2d 1051; *Werner v. Kliewer* (1985), 238 Kan. 289, 710 P.2d 1250; *Piller v. Kovarsky* (1984), 194 N.J. Super. 392, 476 A.2d 1279; *Wimberly Resorts Property, Inc. v. Pfeuffer* (Tex. App. 1985), 691 S.W.2d 27; *City of Portsmouth v. Cilumbrello* (1963), 204 Va. 11, 129 S.E.2d 31.) Other States reach the same result by finding an implied

waiver in this situation. (See *Bond v. District Court* (Colo. 1984), 682 P.2d 33; *Mathis v. Hilderbrand* (Alaska 1966), 416 P.2d 8; *McNutt v. Keet* (Mo. 1968), 432 S.W.2d 597.) Still other jurisdictions have held that the filing of a pleading does not constitute a waiver of privilege as to a physical or mental condition described in the pleading. See *Wilson v. Bonner* (1983), 166 Ga. App. 9, 303 S.E.2d 134; *Lewkow v. Gracie Square Hospital* (1982), 114 Misc. 2d 732, 452 N.Y.S.2d 290; *Neese v. Neese* (1968), 1 N.C. App. 426, 161 S.E.2d 841.

We believe that plaintiff placed his physiological and biological condition at the time of the accident into issue and made discoverable all information relating to that condition. To prevail in a strict liability action, plaintiff must show not only some defect in the product or design, but also that the condition of the product proximately caused the injury. (*Rios v. Navistar International Transportation Corp.* (1990), 200 Ill. App. 3d 526, 558 N.E.2d 252.) Although a plaintiff need not allege freedom from contributory negligence, the issue of plaintiff's comparative fault applies in any strict liability case. (*Byrne v. SCM Corp.* (1989), 182 Ill. App. 3d 523, 538 N.E.2d 796.) Plaintiff cannot initiate litigation in which his physical condition is a critical consideration, then use the privilege to shield truth-seeking about that condition. (*Cf. Dillenbeck v. Hess* (1989), 73 N.Y.2d 278, 536 N.E.2d 1126, 539 N.Y.S.2d 707 (defendant did not waive privilege by denying allegations in complaint); *Clark v. District Court Second Judicial District* (Colo. 1983), 668 P.2d 3 (defendant did not waive privilege by denying allegations in complaint where plaintiff placed defendant's physical and mental problems at issue).) Moreover, a manufacturer of a product can avoid all responsibility when evidence shows that another's conduct was the sole proximate cause of injury. (*Soto v. E.W. Bliss Division of Gulf & Western Manufacturing Co.* (1983), 116 Ill. App. 3d 880, 452 N.E.2d 572.) Based upon the foregoing principles, we believe that plaintiff impliedly introduced his condition as an issue when he filed this suit.

The record reveals that plaintiff's blood-alcohol level after the accident measured .136 grams. If plaintiff had been operating a motor vehicle at the time of the accident, instead of a waste disposal system, our laws would presume plaintiff was "under the influence of alcohol." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.2(b)(3).) It is possible that plaintiff's intoxication may have contributed to or even proximately caused the accident. In addition, the records at issue may lead to discoverable information regarding defendant's

third-party claim against Northwestern. (*Monier v. Chamberlain* (1966), 35 Ill. 2d 351, 221 N.E.2d 410.) Specifically, if Northwestern knew that plaintiff suffered from chronic alcoholism at the time of the accident but allowed him to operate hazardous machinery, there may exist a basis for Northwestern's liability. Because plaintiff's condition of sobriety bears on his capacity to have properly used the machine and, in turn, on plaintiff's comparative fault and Northwestern's liability, such condition is relevant. Moreover, such discovery is critical in order for defendant to defend against plaintiff's claim and to prosecute its third-party claim against Northwestern. In our view, the trial court in its discretion could find, after an *in camera* review, that the records were relevant and probative to issues in the case. Further, the court could properly find that the interests of substantial justice outweighed any harm to plaintiff from disclosure.

We find *Pritchard v. SwedishAmerican Hospital* (1989), 191 Ill. App. 3d 388, 547 N.E.2d 1279, and *Thiele v. Ortiz* (1988), 165 Ill. App. 3d 983, 520 N.E.2d 881, cited by plaintiff, inapposite to this case. In *Thiele*, this court held that the filing of a wrongful death action did not place decedent's mental condition at issue. The court rejected defendant's argument that decedent's mental condition and relationship with his family were relevant to the loss of society claim and upheld the trial court's order precluding disclosure of psychological evaluations of decedent.

Unlike *Thiele*, this case does not pertain to a condition that "may be only peripherally" related to plaintiff's claim, as the court there reasoned. (*Thiele*, 165 Ill. App. 3d at 993, 520 N.E.2d at 888.) Rather, as indicated above, plaintiff's blood-alcohol level has a direct bearing on plaintiff's claim and Hobart's defense. Moreover, unlike in *Thiele*, the records here relate to proximate cause, a critical element of proof in a tort case. Defendant in *Thiele* alleged that the records at issue related to a loss of society claim in a wrongful death action, which pecuniary injury our law presumes. *Bullard v. Barnes* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228.

*Pritchard*, cited by plaintiff for the proposition that recipient must place his mental condition at issue, does not apply here. In *Pritchard*, a medical malpractice case, this court concluded that plaintiff could not place defendant-doctor's mental condition at issue. Rather, to waive protection under the Confidentiality Act, the "recipient" must place his mental condition at issue. In this case, plaintiff's, not defendant's, condition is at issue. Moreover, as we

have indicated above, plaintiff placed his condition at the time of the accident at issue when he filed this action.

Nor do we believe that *Tylitzki v. Triple X Service, Inc.* (1970), 126 Ill. App. 2d 144, 261 N.E.2d 533, or *Webb v. Quincy City Lines, Inc.* (1966), 73 Ill. App. 2d 405, 219 N.E.2d 165, requires us to find otherwise. These cases hold that a plaintiff who alleges pain and suffering as an element of damage does not place his mental condition at issue. In both cases, plaintiffs sustained physical injuries resulting from accidents. Both courts recognized that physical trauma does not necessarily result in pain and suffering. Indeed, the *Webb* court wrote: "[W]e find it difficult to conclude that one undergoing pain and suffering suffers deterioration in mental condition. Nor do we think that in either alleging or considering pain and suffering originating in physical trauma we ipso facto have trauma affecting the mentality." (*Webb*, 73 Ill. App. 2d at 408, 219 N.E.2d at 167.) Similarly, the *Tylitzki* court wrote: "We agree that it is the affirmative aspect which should be controlling. The privilege is too important to be brushed aside when the mental condition of the plaintiff may be only *peripherally involved*." (Emphasis added.) (*Tylitzki*, 126 Ill. App. 2d at 149, 261 N.E.2d at 536.) In this case, we simply cannot say that plaintiff's condition at the time of the accident is only "peripherally involved." Rather, as noted previously, plaintiff's condition of sobriety is a central issue and bears on proximate cause, plaintiff's comparative fault and the third-party defendant's liability. As such, *Webb* and *Tylitzki* are distinguishable.

Accordingly, we conclude that the Confidentiality Act does not protect alcoholism treatment records from disclosure. Moreover, even assuming the Confidentiality Act applied to the records, the trial court properly found them discoverable under the statutory exception.

■ We next consider plaintiff's contention that the Alcoholism Act (Ill. Rev. Stat. 1987, ch. 111½, par. 6358—2) protected the records from disclosure. The Alcoholism Act provides that a client's records pertaining to treatment of alcoholism are confidential and may be disclosed only as authorized by the statute. One exception to the statutory mandate of confidentiality provides in pertinent part:

> "Whether or not the patient, with respect to whom any given record referred to in this Section is maintained, gives his written consent, the content of such record may be disclosed ***

\*\*\* [i]f authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the practitioner-patient relationship, and to the treatment services." Ill. Rev. Stat. 1987, ch. 111½, par. 6358—2.

Plaintiff argues that defendant did not demonstrate good cause for production of the records and that the trial court, therefore, abused its discretion in ordering disclosure. We disagree.

■ Although we recognize that relevancy alone does not equal good cause, it is an important consideration. Here, contrary to plaintiff's assertion, the records are relevant to the issues in this case. Plaintiff's lack of sobriety may have affected his capacity to properly operate defendant's waste disposal machine. As already noted, the records may contain evidence to defeat plaintiff's claim or assist defendant in prosecuting its third-party claim against Northwestern, or may lead defendant to such relevant evidence for trial. See *Computer Teaching Corp. v. Courseware Applications, Inc.*, 199 Ill. App. 3d 154, 556 N.E.2d 816.

Although we agree with plaintiff's characterization of the records as "highly personal and sensitive," and his contention that disclosure may affect the practitioner-patient relationship if it continues to exist, these concerns do not outweigh the need for disclosure. Further, there is no evidence in the record that plaintiff was still receiving treatment services through Northwestern's employee assistance program when the trial court ordered disclosure of the records in May 1990. The potential for injury to plaintiff is inconsequential when juxtaposed against defendant's right to discover evidence in its defense.

Nor are we persuaded by plaintiff's argument that defendant's failure to use other discovery methods, such as supplementary interrogatories, requests for production and additional depositions, to prepare its defense mitigates against a finding of good cause. Because plaintiff refused to consent to disclosure of the records, presumably he would not respond to such alternative discovery, raising the same discovery privilege. A practitioner being deposed would similarly raise the privilege. Although the Alcoholism Act applies to the records at issue, the trial court in its discretion properly found good cause for disclosure.

In summary, we are persuaded that plaintiff put his condition in issue and that defendant Hobart is not on a fishing expedition. The

interest in having truth triumph outweighs plaintiff's interest in preventing disclosure and such result is consistent with a sound construction of the statutes and the modern trend toward open and full discovery and fundamental fairness between the parties.

In summary, plaintiff's refusal to comply with the trial court's order has no basis in either the Confidentiality Act or the Alcoholism Act.

For the foregoing reasons, the judgment of the circuit court of Cook County ordering the disclosure of the records at issue and finding plaintiff's counsel in contempt of court is affirmed. We direct plaintiff to turn the records over to defendant within 21 days after the filing of this opinion. Plaintiff's counsel shall be purged of contempt upon compliance with this direction.

Judgment affirmed with directions.

EGAN, J., concurs.

PRESIDING JUSTICE RAKOWSKI, dissenting:
While I agree with the majority regarding the inapplicability of the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1989, ch. 91½, par. 801 *et seq.*), I disagree that plaintiff impliedly introduced his mental health condition as an issue when he filed this suit. No Illinois court has ever held that the mere filing of a negligence or strict liability action *ipso facto* places at issue the mental condition of the plaintiff so as to waive the statutory privilege. Nor does the majority cite any other authority to support its position.

The exception relied upon by the majority to exclude application of the statutory privilege to the facts of this case reads in pertinent part as follows:

"Records and communications may be disclosed in a civil, criminal or administrative proceeding in which the recipient introduces his mental condition or any aspect of his services received for such condition as an *element of his claim or defense*, if and only to the extent the court *** finds, after in camera examination of testimony or other evidence, that it is relevant, probative, not unduly prejudicial or inflammatory, and otherwise clearly admissible; that other satisfactory evidence is demonstrably unsatisfactory as evidence of the facts sought to be established by such evidence; and that disclosure is more important to the interests of substantial justice than

protection from injury to the therapist-recipient relationship or to the recipient or other whom disclosure is likely to harm." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 91½, par. 810(a)(1).

While the majority states that plaintiff's alcohol treatment records are relevant, probative and the interests of substantial justice require disclosure, the threshold inquiry is whether the plaintiff placed his mental condition at issue. Whether the sought after information is relevant, probative, not unduly prejudicial or inflammatory, etc., are only germane inquiries where the court has first determined that the plaintiff has placed his mental condition in issue.

In *Webb v. Quincy City Lines, Inc.* (1966), 73 Ill. App. 2d 405, 219 N.E.2d 165, the court held that a complaint alleging pain and suffering as a damage element did not place the plaintiff's mental condition in issue. The *Webb* court went on to state, "[W]e think we are under compulsion, therefore, to read section 5.2 literally and hold that the privilege exists unless 'mental condition' is specifically made a part of either the claim or defense." (*Webb*, 73 Ill. App. 2d at 408; see also *Tylitzki v. Triple X Service, Inc.* (1970), 126 Ill. App. 2d 144, 261 N.E.2d 533.) Both of these cases stand for the proposition that the privilege is not waived where a plaintiff files a complaint containing a pain and suffering allegation. Yet, the majority in the case *sub judice* holds that the mere filing of the complaint in and of itself constitutes waiver.

Courts of other jurisdictions, in addressing similar statutes, have refused to find waiver merely because a party filed a pleading in an action where his physical or mental condition may be an issue. In *Dillenbeck v. Hess* (1989), 73 N.Y.2d 278, 536 N.E.2d 1126, 539 N.Y.S.2d 707, a case involving a physician-patient privilege and an exception similar to the Illinois exception, the court refused to apply the waiver doctrine even though it found that defendant's physical condition at the time of the accident was clearly in controversy. In *Dillenbeck*, the defendant had been drinking rather heavily over a seven-hour period leading up to the accident, and there was at least some suggestion that she may have been "shut off" by a bartender because of her intoxicated condition. The court held that

> "defendant's physical condition at the time of the accident is 'in controversy' within the meaning of [the statute] and thus potentially subject to discovery.
>
> The information sought by plaintiffs, however—hospital records relating to defendant's physical condition and blood alcohol content following the accident—indisputably falls within

the scope of the physician-patient privilege as information acquired by a physician 'in attending [defendant] in a professional capacity, and which was necessary to enable him to act in that capacity' [Citation]. Defendant cannot be said to have waived the privilege simply by denying the allegations in the complaint or by testifying that she cannot remember any details of the incident where the fact of her memory loss is not being advanced to excuse her conduct [citation]. Nor has she waived the privilege by asserting the defenses of comparative negligence and the failure of plaintiffs to wear seat belts since neither defense seeks to excuse the conduct complained of by asserting a mental or physical condition. Moreover, the mere fact that the privilege presents an obstacle to plaintiffs' discovery of legally pertinent information that would assist them in proving their claim is not, as the dissent seems to suggest, evidence that the privilege is not properly recognized in this case. Indeed, it is inherent in the very nature of an evidentiary privilege that it presents an obstacle to discovery and it is precisely in those situations where confidential information is sought in advancing a legal claim that such privilege is intended to operate. Were we to carve out an exception to the privilege whenever it inhibited the fact-finding process, it would quickly become eviscerated." *Dillenbeck*, 73 N.Y.2d at 288-89, 536 N.E.2d at 1133, 539 N.Y.S.2d at 714.

See also *Koump v. Smith* (1969), 25 N.Y.2d 287, 250 N.E.2d 857, 303 N.Y.S.2d 858.

In *Clark v. District Court* (Colo. 1983), 668 P.2d 3, 10, a case involving the Colorado physician-patient and psychologist-client privileges, the court held:

"Given the clear terms of these statutory privileges, it would be inappropriate for us to read into the statutory scheme an implied waiver based on nothing more than the privilege holder's act of filing a pleading in a case in which his physical or mental condition may be an issue. In our view, the appropriate inquiry under such circumstances should be whether the privilege holder has injected his physical or mental condition into the case as a basis of a claim or an affirmative defense."

Thus, while my research has been unable to uncover any cases on the issue of whether waiver shall be applied merely as a result of a law suit being filed, I think the above authority reveals that such is not the case. Indeed, comprehensive reviews of the psycho-

therapist-patient and physician-patient privileges never even address the issue of whether the mere filing of a negligence action constitutes a waiver of the privilege. (See generally Annot., *Privilege, in Judicial or Quasi-Judicial Proceedings, Arising from Relationship Between Psychiatrist or Psychologist and Patient*, 44 A.L.R.3d 24 (1972); Annot., 21 A.L.R.3d 912 (1968).) In both of these annotations waiver is only discussed when filing a suit is in conjunction with some other factor which could constitute waiver.

While the majority reasons that plaintiff's state of intoxication may have caused the accident, and thus is relevant to the issue of plaintiff's comparative fault, it is important to note that comparative fault is an affirmative defense. Thus, it is capable of being waived by defendant (*Terminal Freezers, Inc., v. Roberts Frozen Foods, Inc.* (1976), 41 Ill. App. 3d 981, 984, 354 N.E.2d 904) and is not necessarily placed in issue with the filing of the complaint. Likewise, a defendant may fail to pursue third-party relief against an employee-plaintiff's employer, and even if third-party relief is initiated and plaintiff's mental condition becomes an issue, it is not an element of plaintiff's claim.

Nor do I agree with the majority position that the Illinois Alcoholism and Other Drug Dependency Act (Ill. Rev. Stat. 1989, ch. 111½, par. 6351—1 *et seq.*) does not protect the records from disclosure. The good-cause exception to the Act, relied upon by the majority to allow disclosure of the records, provides that such record may be disclosed

>"[i]f authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the practitioner-patient relationship, and to the treatment services." Ill. Rev. Stat. 1989, ch. 111½, par. 6358—2(3).

In its analysis of the statute, the majority seems to equate good cause with information that is either relevant or could lead to relevant information. While inquiries concerning relevancy are always proper in discovery disputes, the concept of relevancy applies to a much broader spectrum of information than does the issue of good cause. Because all discovery is limited to matters that are either relevant or could lead to relevant information, the equating of good cause with relevancy would completely eradicate the privilege within a lawsuit context. Such a result could hardly have been the intent of the legislature when it enacted the privilege. In my opin-

ion, the following language used by the *Dillenbeck* court concerning the physician-patient privilege is most appropriate to the case *sub judice*:

"Moreover, the mere fact that the privilege presents an obstacle to plaintiffs' discovery of legally pertinent information that would assist them in proving their claim is not, as the dissent seems to suggest, evidence that the privilege is not properly recognized in this case. Indeed it is inherent in the very nature of an evidentiary privilege that it presents an obstacle to discovery and it is precisely in those situations where confidential information is sought in advancing a legal claim that such privilege is intended to operate. Were we to carve out an exception to the privilege whenever it inhibited the fact-finding process, it would quickly become eviscerated." *Dillenbeck*, 73 N.Y.2d at 289, 536 N.E.2d at 1133, 539 N.Y.S.2d at 714.

For the foregoing reasons it is my opinion that production of the "Employees Assistance Records" is barred by the Illinois Alcoholism and Other Drug Dependency Act (Ill. Rev. Stat. 1989, ch. 111½, par. 6351—1 *et seq.*).

Accordingly, I would reverse the judgment of the circuit court and vacate the finding of contempt along with the resulting fine.